IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MONTANA

BILLINGS DIVISION

| | |
|---|---|
| JAMES B. COX,<br><br>               Plaintiff,<br><br>vs.<br><br>YELLOWSTONE COUNTY,<br><br>               Defendant. | CV 10-65-BLG-RFC-CSO<br><br><br>**FINDINGS AND RECOMMENDATIONS OF UNITED STATES MAGISTRATE JUDGE** |

Plaintiff James B. Cox ("Cox"), appearing *pro se*, brings this action against Defendant Yellowstone County for allegedly violating his due process rights. Cox alleges that Yellowstone County sold his mobile home using a procedure that did not allow him "to be heard nor to present evidence nor to call witnesses ... to prevent the sale of [his] property." *Cmplt. (Court Doc. 1) at ¶ IV.A.1. and Appendix B.* At issue is the constitutionality of Montana's agisters' lien statute.

Now pending is Yellowstone County's Motion for Summary Judgment. *Court Doc. 30.* Having reviewed the record, together with the parties' arguments in support of their positions, the Court finds that

the agisters' lien statute as applied is unconstitutional, and therefore recommends, for the following reasons, that Yellowstone County's Motion for Summary Judgment be denied.

## I.   BACKGROUND

Cox alleges that, on March 12, 2007, he bought a mobile home from Jennifer Wahl for the sum of $2,400. *Court Doc. 1 at 5, 8; Court Doc. 1-1 (Bill of Sale)*. The next day Cox sold it on a contract for deed to Danyel Gaede for the same sum. *Court Doc. 1-5*.

Gaede thereafter moved the trailer to 7716 Alderson, property then owned by Hector and Rosina Rubio. The circumstances of that move are disputed. Rosina Rubio states that she entered into an agreement with Danyel Gaede to rent a mobile home space. *Court Doc. 1-2 (Rubio Affidavit of Agister's Lien)*. Danyel Gaede states that he moved the mobile home onto the Rubio property at the Rubios' request as part of an employment agreement and that the Rubios agreed that he would pay no rent as long as he "continued to watch their equipment for them." *Court Doc. 37 at 2, 5*. Rubios' attorney acknowledges that Gaede was to use the space as part of employment, but states that the employment "did not occur." *Court Doc. 33 at 2 (Affidavit of Terry L.*

*Seiffert*).

On November 6, 2007, Rosina Rubio ("Rubio") executed an

Affidavit of Agister's Lien, stating that the owners of the mobile home

(Wahl and Cox) owed her $1,660 for its storage. *See Court Doc. 32-4*

*(Affidavit of Agister's Lien, dated Nov. 6, 2007).* A copy of this affidavit

was received by Cox. Cox alleges that this affidavit falsely claimed

three things:

> (1) that Cox's mobile home had been stored on Rubio's property
>
> since August 16, 2005, which was 19 months before Cox owned the
>
> mobile home, *id. at Appendix B and Ex. 2 (Affidavit of Agister's*
>
> *Lien*);
>
> (2) that on November 6, 2007, Jennifer Wahl ("Wahl"), of 302
>
> Jackson Street, jointly owned the mobile home with Cox, which
>
> was untrue because Wahl sold the mobile home to Cox, *id. at*
>
> *Appendix B*; and
>
> (3) Rubio was owed $1,660 as of November 6, 2007, under a rental
>
> agreement for storing the mobile home, which was untrue because
>
> "[t]here was no such rental agreement[,]" *id. at Appendix B.*

Cox alleges that he was selling the mobile home to Danyel Gaede

("Gaede") under the contract for deed when Rubio executed her agister's lien affidavit (*id. at Appendix B and Exhibit 5),* and that the action taken on Rubio's agister's lien has injured him because it prevented him from fulfilling this contract for deed. *Court Doc. 1 at 6.*

Gaede contends that he was driven out of the mobile home by the actions of Rubio's son, Jacob. *Court Doc. 37 at 6 (Gaede Affidavit).* Gaede states that when he attempted to remove the trailer from the Rubio property, he was prevented from doing so by threats of violence from Jacob and Jacob's friends. *Id. at 4.* Gaede says that he did not abandon the trailer, but "was driven out of it by Jacob Rubio's threats and vandalism." *Id. at 5.*

On December 21, 2007, the Rubios' attorney requested the Yellowstone County Sheriff's Office to sell the mobile home pursuant to the agister's lien. On January 15, 2008, a civil process officer with the Sheriff's Office posted a Notice of Sheriff Sale at four locations and sent notice of the sale to Cox. Notice of the sale was also published in the *Billings Times.* In these notices, the Sheriff advertised the sale of the mobile home to be conducted on January 23, 2008, at 7716 Alderson, in Billings, Montana. *See Court Doc. 36 (Yellowstone County's Statement*

*of Undisputed Facts),* at 2-3.  Cox contends that he sought unsuccessfully to obtain information about the sale from the Sheriff's office.  *Court Doc. 39 at 4-5.*  Cox states that when he went to the Sheriff's Office on January 22, 2008, to obtain information about the sale and to file a vandalism report, he was told that the sale would occur the following day.  *Court Doc. 21 at 3.*

On January 23, 2008, the Sheriff's Office sold the mobile home to Rubio for $500.  *Court Doc. 32-7 (Certificate of Sale).*  Cox did not attend the sale.  The Certificate of Sale states that the location of the sale was 1532 Grand Avenue, Billings, Montana, rather than 7716 Alderson as stated in the Notice of Sale.  Because the Certificate of Sale so states, Cox maintains that the sale was actually conducted at 1532 Grand Avenue in Billings.  The officer who conducted the sale states that the sale in fact occurred at 7716 Alderson, and that the discrepancy occurred because he "likely used the form of an old certificate of sale ... and inadvertently failed to change the place of sale."  *Court Doc. 35 at 2 (Curtis Gibbs Affidavit).*

Cox alleges that he did not learn that Rubio was the owner of the mobile home until mid-November 2009 when he inquired with the

Yellowstone County Assessor because he had not received a tax bill for the mobile home for 2008. Until that time, Cox alleges, he "did not know whether the sale had actually been conducted or the outcome." *Court Doc. 1 at Appendix B.*

On January 20, 2010, Cox filed a *pro se* state court action against Rosina, Hector, and Jacob Rubio, and their attorney. *Court Doc. 39-2 at 24 (Transcript of Proceedings,* dated April 6, 2010, in Montana Thirteenth Judicial District Court, Yellowstone County). The state district court concluded that Cox brought the action for conversion of the mobile home after the defendants had followed the statutory agister's lien procedures, and that "there is no legal basis to file a conversion action when the Defendants asserted and foreclosed on an Agister's Lien according to law." *Court Doc. 23 at 66* (Order Granting Summary Judgment in Cause No. DV 10-99, MT Thirteenth Judicial Dist. Ct., Yellowstone County) (*citing Bethel v. Giebel*, 101 MT 410 (1936)). The court ordered Cox to pay $4,787.40 in Rule 11 sanctions for filing a frivolous complaint. *Id. at 67-68 (*Judgment dated Sept. 21,

2010).[1]  On April 5, 2011, the Montana Supreme Court affirmed.  *Court Doc. 42-1.*  The state court action did not address the procedural due process issues raised here.

Cox initiated this action in federal court on June 4, 2010.  *Court Doc. 1 at 1.*  The parties agreed to settle Cox's claims for monetary damages and stipulated that Cox's damages claims could be dismissed.  *Court Doc. 28.*  Pursuant to that stipulation, monetary damages claims were dismissed by the Court on December 30, 2010.  *Court Doc. 29.*[2]  The parties have agreed that the only issues remaining in this case are:

> (1) Plaintiff's claim that Yellowstone County violated his Due Process rights under the Fifth and Fourteenth Amendments of the United States Constitution by selling his property without giving him an opportunity to be heard prior to the sale, and
>
> (2) Plaintiff's claim that Yellowstone County violated his Due

---

[1]The cited documents are the order and judgment in state district court submitted by Cox with his preliminary pretrial statement.  The Court has obtained identical copies of these documents from the Yellowstone County Clerk of Court and, pursuant to Fed.R.Evid. 201, the Court takes judicial notice of these state court documents.

[2]In several documents, Cox has represented that this Court ordered Yellowstone County to pay damages.  *See, e.g., Court Doc. 39-3* (letter from Cox to Sheriff Linder, dated January 7, 2011, stating "In [this] lawsuit, the U.S. District Court has already ordered the county to convey to me the fee it got for the wrongful taking....") This is not accurate.  This Court has not ordered the County to pay damages to Cox.  Instead, the parties settled Cox's damages claims among themselves and the Court accordingly dismissed these claims.

Process rights under the Fifth and Fourteenth Amendments of the United States Constitution when the sale of his property was conducted at a location different than that described in the notice of sale.

*See Court Doc. 27 at 2-3.* Yellowstone County moves for summary judgment on these two remaining claims.

## II.  PARTIES' ARGUMENTS

### A.  Yellowstone County's Arguments

Yellowstone County argues that the sale of Cox's mobile home did not violate his procedural due process rights. *Court Doc. 31 at 1.* Yellowstone County concedes that although the agisters' lien statute provides a property owner with notice of a sale of the owner's property, it "does not provide a property owner with an opportunity to be heard as to the validity of a sale prior to the sale."  *Id. at 10; see also Court Doc. 40 at 3.* Nor does the agisters' lien statute specify any procedures for a post-deprivation opportunity to be heard.

Although the statute lacks a procedure for either a pre- or post-deprivation hearing, Yellowstone County contends that Montana's agisters' lien statute is adequate because a property owner can challenge a deprivation by bringing a separate declaratory judgment

action.  *Court Doc. 31 at 10-11.*  Without identifying who would be the

proper defendants in such an action or identifying what relief might be

available to the property owner, Yellowstone County argues that this

separate declaratory judgment proceeding affords a property owner a

sufficient opportunity to be heard regarding the deprivation.  *Court Doc.*

*31 at 11.*

Yellowstone County also asserts that "Cox was provided an

opportunity to be heard as to any problems with the sale in the separate

case" and that "Cox provided himself with the opportunity to be heard

through the action he filed in state court as to the validity of the sale."

*Court Doc. 31 at 11, 12-13.*

Next, the County argues it is entitled to summary judgment

regarding Cox's claim based on the location of the sale, submitting

evidence that the sale took place in accordance with the Notice of Sale.

*Court Doc. 31 at 11-12.*  The County contends that there is no genuine

issue of material fact regarding the location of the sale, relying on the

affidavits of the Yellowstone County Civil Process Server, Curtis Gibbs,

and the new owner of the mobile home, Rosina Rubio.  *Court Doc. 31 at*

*11-12.*

### B. Cox's Arguments

In response, Cox argues that summary judgment is inappropriate for two reasons. First, he argues that in the context of Montana's agisters' lien statute, post-deprivation process is inadequate because there are no extraordinary circumstances justifying the delay in process. *Court Doc. 39 at 6-9.* Cox does not contend that Yellowstone County failed properly to follow the Montana statute. Rather, his claim challenges the constitutional adequacy of the agisters' lien statutory enforcement procedures.

Second, he contends there is a genuine issue of material fact regarding where the sale of his mobile home took place due to the discrepancy between the above-mentioned affidavits and the Certificate of Sale. *Court Doc. 38 at 3; Court Doc. 39 at 14-15.*

## III. LEGAL STANDARD

The Court will grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). Yellowstone County, as the movant, bears the initial responsibility of informing the Court of the basis for its motion, and identifying those

portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Material facts are those which may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable fact-finder to return a verdict for the nonmoving party. *Id.*

Yellowstone County has both the initial burden of production and the ultimate burden of persuasion on a motion for summary judgment. *Nissan Fire & Marine Ins. Co. v. Fritz Companies, Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000). "In order to carry its burden of production, the moving party must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Id.*

If Yellowstone County meets its initial responsibility, the burden then shifts to Cox to establish that a genuine issue as to any material fact actually does exist. *Matsushita Elec. Indus. Co. v. Zenith Radio*

*Corp.*, 475 U.S. 574, 586 (1986). Cox may not rely solely on his pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. Fed. R. Civ. P. 56(c); *Matsushita*, 475 U.S. at 586, n.11. He must demonstrate that the dispute is genuine, *i.e.*, the evidence is such that a reasonable jury could return a verdict for the him. *Anderson*, 477 U.S. at 248 ("summary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party").

When the material facts are undisputed and resolution of a motion for summary judgment turns on a question of law, the court may determine which party's position is correct as a matter of law. If there are no genuine issues of fact pertaining to a claim, the movant's burden is not an evidentiary one – because the material facts are not in dispute – but rather the court is left with the obligation to resolve the legal dispute between the parties as a matter of law. *Gulf Ins. Co. v. First Bank,* 2009 WL 1953444 * 2 (E.D. Cal. 2009) (*citing Asuncion v. Dist. Dir. of U.S. Immigration & Naturalization Serv.*, 427 F.2d 523, 524 (9th

Cir.1970)).

## IV. <u>DISCUSSION</u>

### A. <u>Montana's Agisters' Lien Statute</u>

M.C.A. § 71-3-1201(2)(a) provides:

Every person who, while lawfully in possession of an article of personal property, renders any service to the owner or lawful claimant of the article by ... storage of the article ... has a special lien on the article.  The lien is dependent on possession and is for the compensation, if any, that is due to the person from the owner or lawful claimant for the service ....  If the service is towing or storage, the lien is for the reasonable cost of the towing or storage.

M.C.A. § 71-3-1203 governs enforcement of the lien,[3] and provides

---

[3]In pertinent part, M.C.A. §71-3-1203 provides:

If payment for work, labor, or services performed ... is not made within 30 days after the performance of the work, labor, or services..., the person entitled to a lien under the provisions of this part may enforce the lien in the following manner:

(1) The person shall deliver to the sheriff or a constable of the county in which the property is located an affidavit of the amount of the person's claim against the property, a description of the property, and the name of the owner of the property or of the person at whose request the work, labor, or services were performed....
(2) Upon receipt of the affidavit, the sheriff or constable shall proceed to advertise and sell at public auction as much of the property covered by the lien as will satisfy the lien.
(3) The sale must be advertised, conducted, and held in the same manner as prescribed in 25-13-701(1)(b)[setting forth procedures for sale on execution of a judgment].
(4) Before the sheriff or constable sells the property at public auction, the sheriff or constable shall give notice of the sale to the owner or person at whose request the work, labor, or services were performed....
(a) Notice to the owner must be given at least 10 days before the sale.

that, upon receipt of an affidavit from the claimant stating the amount

claimed against the property, a description of the property, and the

name of the property owner, the sheriff then proceeds to advertise and

sell the property at public auction. The sheriff is required to give notice

of the sale to the property owner at least 10 days before the sale, but

there is no statutory provision allowing the property owner to be heard

regarding the facts alleged in the agister's lien affidavit. The sheriff

may require that the lienholder post an indemnity bond, but it is not

---

(b) The notice must state:
(i) the time and place of the sale;
(ii) the amount of the claim against the property;
(iii) a description of the property;
(iv) the name of the owner or person who contracted for the services or materials;
(v) the name of the person claiming the lien.
(c) The notice may be given by personal service or by mailing by certified mail a copy of the notice to the last-known post-office address of the owner or person who contracted for the work, labor, or services performed or the feed or material furnished.
(d) If the Sheriff or constable is not able to effect personal service or service by mail because the location and mailing address of the owner or the contracting person are unknown, the sheriff or constable may give notice by posting notice of the sale in three public places in the county in which the property is located.
****
(6) However, before seizing any property under the provisions of this section, the sheriff may require an indemnity bond from the lienor that may not exceed double the amount of the claim against the property. The bond and the surety or sureties on the bond must be approved by the sheriff.

mandatory that the sheriff do so.  There is no evidence that the sheriff

requested the Rubios to post an indemnity bond.

In 1986, the Montana Supreme Court considered a case in which

the plaintiff argued that the agisters' lien statute, as it was then

enacted, was unconstitutional.  *Rose v. Myers*, 724 P.2d 176 (Mont.

1986).  The Roses' horses were sold pursuant to an agister's lien, and

they filed a petition for declaratory relief, asking the district court to set

aside the sale.  The district court held that the sale was valid and that

the Roses were not denied due process.  On appeal, the Montana

Supreme Court did not decide the constitutional due process issue,

explaining:

> The attention of the Montana Legislature is respectfully
> directed to the due process provisions of Article II, Section 17, of
> the Montana Constitution, the Fourteenth Amendment of the
> Constitution of the United States and their application to the
> notice provisions of § 71-3-1203.
> The agisters' lien statute was first enacted in 1895 and is an
> important part of our commercial law, serving as a practical
> matter both the interest of debtors and creditors.  If in a future
> case this statute was found to be unconstitutional, it would invite
> chaos and confusion in this area of law.

*Id.* at 16.

In his concurrence in *Rose v. Myers*, Justice Hunt did address the

constitutional issue.  He wrote:

> I would hold that § 71-3-1203, MCA, is clearly unconstitutional. The statute violates the due process clauses of the state and federal constitutions. ... There is no requirement for a verified affidavit, no participation by a judge, no mandatory bond, and no procedure to seek an immediate halt of the sale.  Further, there are no other legal remedies available to sufficiently guarantee due process.  The legal procedures available to the owner, such as the institution of an action for conversion or for declaratory relief, are insufficient substitutes for a pre-sale hearing.  There is little probability that trial of a contested lien claim can be held within the minimum period preceeding (*sic*) transfer to the buyer, and injunctions or other extraordinary remedies are discretionary with the trial court and thus lack the certainty necessary to insure a hearing prior to permanent deprivation.

*Id.* at 22-23 (Hunt, J., concurring).

In 1987, likely in response to *Rose v. Myers,* the Montana Legislature amended the agisters' lien statute by adding: (1) a requirement that the claimant file an "affidavit", rather than merely a "statement", and (2) a requirement that the sheriff give notice to the owner at least ten days before the sale.  *Laws of Montana, Vol. 1, Chap. 87, Sec. 1 (1987).*  The legislature did not amend the statute to address the other due process concerns raised by Justice Hunt in his concurrence in *Rose.*

**B.  <u>Procedural Due Process Analysis</u>**

The Fourteenth Amendment forbids any State from depriving persons of "life, liberty, or property, without due process of law[.]" Supreme Court precedents establish the general rule that individuals must receive notice and an opportunity to be heard before the Government deprives them of property.  *United States v. James Daniel Good Real Property,* 510 U.S. 43, 48 (1993).  Due process requirements apply to state lien procedures: "Without doubt, state procedures for creating and enforcing attachments, as with liens, 'are subject to the strictures of due process.'"  *Connecticut v. Doehr*, 501 U.S. 1, 12 (1991)(*citing Peralta v. Heights Medical Center, Inc.,* 485 U.S. 80, 85 (1998)).

A procedural due process claim has two distinct elements:  (1) a deprivation of a constitutionally protected liberty or property interest, and (2) a denial of adequate procedural protections."  *Brewster v. Bd. of Education of the Lynwood Unified School Dist.*, 149 F.3d 971, 982 (9th Cir. 1998); *see also Buckingham v. Sec. of the U.S. Dept. of Agriculture*, 603 F.3d 1073, 1081 (9th Cir. 2010).  Neither party here disputes that Cox had a property interest deserving Constitutional protection in the

mobile home sold by Yellowstone County, nor do they dispute that Cox

was deprived of the mobile home because of its sale to Rubio by

Yellowstone County.  Thus, the Court focuses on the second element:

whether the Montana agisters' lien procedures afford required due

process protections.

The procedures required by the Due Process Clause in any given

case are a function of context.  The Supreme Court has long made clear

that due process is a flexible concept:

> "The very nature of due process negates any concept of inflexible
> procedures universally applicable to every imaginable situation.
> "'[D]ue process,' unlike some legal rules, is not a technical
> conception with a fixed content unrelated to time, place and
> circumstances.' It is 'compounded of history, reason, the past
> course of decisions ....'"

*Good,* 510 U.S. at 196-97 (*quoting Cafeteria & Restaurant Workers v.*

*McElroy,* 367 U.S. 886, 895 (1961)).

In *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976), the Supreme

Court articulated a three-part balancing test for deciding what

procedures are required when there has been a deprivation of property.

The Supreme Court has repeatedly applied this *Mathews* balancing test

in deciding what process is due.  In *Connecticut v. Doehr*, the Court

explained how this test should be applied when weighing a prejudgment remedy statute:

> first, consideration of the private interest that will be affected by the prejudgment measure; second, an examination of the risk of erroneous deprivation through the procedures under attack and the probable value of additional or alternative safeguards; and third, in contrast to *Mathews*, principal attention to the interest of the party seeking the prejudgment remedy, with, nonetheless, due regard for any ancillary interest the government may have in providing the procedure or forgoing the added burden of providing greater protections.

501 U.S. at 11. The Court explained that this focus was required because prejudgment remedy statutes "ordinarily apply to disputes between private parties rather than between an individual and the government.... [A]ny burden that increasing procedural safeguards entails primarily affects not the government, but the party seeking control of the other's property." *Id.* at 10-11 (citing *Fuentes v Shevin*, 407 U.S. 67, 99-101 (1972)).

The above-cited authority is distinguishable from this case on the ground that creditors there sought the assistance of state officials in dispossessing debtors of the property at issue, whereas here the creditor was already in lawful possession of the property. But the propriety of the Rubios' temporary retention of Cox's mobile home pursuant to an

agister's lien, prior to the sale, is not presently before this Court – Cox is challenging only the constitutional validity of the sale provision of the agisters' lien statute; and "[i]t requires only a short step if, indeed, a step at all," to apply the above discussed analysis to sale provisions of possessory lien statutes. *Straley v. Gassaway Motor Company, Inc.*, 359 F. Supp. 902, 905 (S.D. W.Va. 1973) (applying procedural due process analysis under *Fuentes*, *supra*, to West Virginia possessory lien statute); *see also, e.g., Stypmann v. City and County of San Francisco*, 557 F.2d 1338 (9th Cir. 1977); *Adams v. Dept. of Motor Vehicles*, 520 P.2d 961, 964-65 (Cal. 1974); *Mason v. M.D. Garris*, 360 F. Supp. 420, 424 (N.D. Ga 1973).   Thus, the Court analyzes the Montana agisters' lien statute, applying these factors.

### 1.   Consideration of Private Interest Affected

"The property interests protected by procedural due process extend well beyond actual ownership of real estate, chattels, or money." *Newman v. Sathyavaglswaran*, 287 F.3d 786, 790 (9th Cir. 2002).  The mobile home at issue clearly falls within the protections of the Due Process Clause.  The Court need not determine whether the mobile home is real or personal property because the Supreme Court has

recognized significant private property interests in both real property and personal property. *See, e.g., Good,* 510 U.S. 43 (residence and acreage at issue); *Fuentes*, 407 U.S. 67 (home appliances at issue).

The County does not dispute that Cox had a significant property interest in his mobile home, or that the sale to Rubio permanently deprived him of this interest. *Court Doc. 31 at 10-12.* "[T]he prohibition against the deprivation of property without due process of law reflects the high value, embedded in our constitutional and political history, that we place on a person's right to enjoy what is his, free of governmental interference." *Fuentes*, 407 U.S. at 81. That Cox did not have possession of the mobile home because he was selling it on an installment contract does not make insignificant his right to due process protection. *See Good,* 510 U.S. at 54-55 (fact that property owner was renting his property to tenants did "not render the loss insignificant or unworthy of due process protection" or "*de minimis*"). Cox specifically alleges that the sale of his property "prevent[ed] me from fulfilling my contract for deed to sell the mobile home to Rev. Gaede." *Court Doc. 1 at 6.* Accordingly, the Court finds that Cox had a substantial private interest in the mobile home.

## 2.     Risk of Erroneous Deprivation & Value of Additional or Alternative Safeguards

The second factor of the *Mathews* test requires an examination of the risk of erroneous deprivation through the procedures under attack and the probable value of additional or alternative safeguards.

As noted above, due process generally requires that individuals receive notice and an opportunity to be heard before the Government deprives them of property. The Montana agisters' lien statute clearly requires that pre-deprivation notice be given to the property owner, and here Cox acknowledges that he did receive such notice.  But due process requires both notice *and* an opportunity to be heard.  *See Wiren v. Eide*, 542 F.2d 757, 763 (9th Cir. 1976) (holding that, although an indigent party received notice of forfeiture proceedings, his due process rights were violated because application of a bond requirement operated to deprive him of his property interest without according him the opportunity for a hearing).  An opportunity to be heard undeniably reduces the risk of an erroneous deprivation of property based on information received from only one of the parties involved.

Yellowstone County contends that no additional safeguards are

necessary because a property owner can challenge a deprivation by initiating a separate declaratory judgment action. But the County cites no case that has so held.

The Supreme Court has held that there is no deprivation of due process if the plaintiff seeks a postdeprivation remedy for the loss of property resulting from a random and unauthorized government act and the state provides an adequate postdeprivation remedy. *See Parratt v. Taylor,* 451 U.S. 527 (1981) (holding that prison inmate did not sufficiently allege violation of Due Process Clause where deprivation of property did not occur as a result of established state procedure and where State provided a tort claims remedy). But the *Parratt* holding has not been extended to cases involving creditors' remedies. One commentator explained:

> [W]hen does the existence of adequate state remedies preclude a due process claim? *Parratt* applies only when:
>
> (1) the plaintiff seeks a postdeprivation remedy;
> (2) for a random and unauthorized act of a government official;
> (3) that resulted in a deprivation of liberty or property without adequate procedural due process;
> (4) where the officials responsible could not have provided a hearing to prevent foreseeable harms; and
> (5) adequate state remedies exist.

.... [T]aken to an extreme, *Parratt* can be extended to say that there never is a state deprivation of due process so long as the state provides an adequate remedy. This approach would end almost all constitutional challenges to state and local actions because almost always there is some state procedure, such as state court remedies, available. The Supreme Court has shown no inclination to take *Parratt* in this direction.

Erwin Chemerinsky, *Constitutional Law Principles and Policies* at 556-57 (3d ed. 2006).

The County points to *Lujan v. G & G Fire Sprinklers*, 532 U.S. 189 (2001), in support of its argument that "[d]ue process can be afforded through a separate legal proceeding not directly related to the deprivation." *Court Doc. 31 at 11.* In *Lujan*, the Court considered a claim by a public works subcontractor who claimed he was denied due process because California statutes authorized the State, without notice or hearing, to withhold money from the subcontractor because the State determined that the subcontractor had violated the Labor Code by failing to pay prevailing wages. The Supreme Court held that the Labor Code did not deprive the subcontractor of property without due process because California law "makes ordinary judicial process available to respondent for resolving its contractual dispute." *Id.* at 197. The Court specifically distinguished, however, its earlier cases involving the

deprivation of "ownership dominion over real or personal property" from those circumstances like *Lujan* where the claimant has not been denied any "present entitlement." *Id.* at 196.

The context presented in this case is more akin to other Supreme Court decisions.  For example, in *Fuentes v. Shevin,* 407 U.S. 67, 96 (l972), the Court held that Florida and Pennsylvania prejudgment replevin provisions "work[ed] a deprivation of property without due process of law insofar as they deny the right to a prior opportunity to be heard before chattels are taken from their possessor."  The Court stated that a purpose of the due process clause is "to minimize substantively unfair or mistaken deprivations of property, a danger that is especially great when the State seizes goods simply upon the application of and for the benefit of a private party."  *Id.* at 81.

Two years later, in *Mitchell v. W.T. Grant Co.,* 416 U.S. 600 (1974), the Court upheld a Louisiana procedure which recognized a writ of sequestration to forestall waste, and distinguished *Fuentes* as follows because the Louisiana statute was different from the statutes at issue in *Fuentes:*

> [B]are conclusory claims of ownership or lien will not suffice under

the Louisiana statute. ...[T]he requisite showing must be made to a judge, and judicial authorization obtained. Mitchell was not at the unsupervised mercy of the creditor and court functionaries. The Louisiana law provides for judicial control of the process from beginning to end. This control is one of the measures adopted by the State to minimize the risk that the ex parte procedure will lead to a wrongful taking. It is buttressed by the provision that should the writ be dissolved there are 'damages for the wrongful issuance of the writ' and for attorney's fees 'whether the writ is dissolved on motion or after trial on the merits.'

*Id.* at 616-17.

In *North Georgia Finishing Inc. v. Di-Chem, Inc.,* 419 U.S. 601 (1975), the Court declared unconstitutional a Georgia law that allowed a creditor to garnish the property of a debtor without notice, without a prior hearing, without a detailed affidavit, without a decision by a judge, and without a requirement for a prompt postdeprivation hearing.

Finally, in *Connecticut v. Doehr,* the Court held unconstitutional a state law allowing a prejudgment attachment of real property without prior notice or hearing and without a showing of exigent circumstances. 501 U.S. at 18. Chemerinsky summarized the law as follows:

All of these cases, from *Sniadach [v. Family Finance Corp. of Bay View,* 395 U.S. 337 (1969)]* to *Doehr*, reflect the Court's recognition of the enormous harms that can result to an individual from prejudgment garnishment, replevin, or attachment. The Court also clearly realizes that there is a great risk of erroneous deprivation if these remedies can be imposed ex parte without

prior notice and a hearing. Thus, unless there are exigent circumstances, the Court almost always has required notice and a hearing prior to the remedy being imposed.

Chemerinsky, *supra,* at 601-02.

Here, as in *Fuentes*, the Court is confronted with a property deprivation solely upon the *ex parte* application of a private party, without an opportunity for the property owner to be heard prior to the deprivation. As in *Fuentes,* "[t]he State acts largely in the dark." *Fuentes*, 407 U.S. at 93. The Montana statute does not require the party asserting the lien to post a security bond. § 71-3-1203(6), MCA.

Because Cox did receive notice of the sale, it could be argued that he should have attended the sale to protect his interests. But his only apparent option at the sale would have been to purchase property that he believed he already owned.

Yellowstone County has not argued that an important governmental interest is at stake here. Nor has Yellowstone County shown that there is a substantial assurance that the deprivations pursuant to the agisters' liens are well-based and warranted. Yellowstone County has not shown that extraordinary circumstances are present to permit the County to dispense with a pre-deprivation

hearing.  This is a dispute between private parties, with no public

interest identified.  No reason has been identified why the deprivation

must occur before some opportunity is given for the property owner to

be heard.  Nor has it been shown that a prompt post-deprivation

hearing is available.  *See Sanders v. City of San Diego*, 93 F.2d 1423

(9th Cir. 1996)(code provisions that provided post-deprivation notice

and opportunity for hearing to pawnbroker, from whom property was

seized by police officers, adequately protected pawnbroker's procedural

due process rights).

Under Montana's agisters' lien statute, the sheriff may sell the

owner's property after giving the owner 10 days notice.  Even if a

declaratory judgment action could be filed within this period of time, it

is unlikely that the defendants could be served, answers to the

complaint filed, and any type of hearing held before the sale occurred.

*See Mont.R.Civ.P. 12(a)* (allowing a defendant 20 days to file an

answer).  Although procedures for injunctive relief are available in some

cases, the availability of such discretionary procedures "lack the

certainty necessary to insure a hearing prior to permanent deprivation."

*Rose,* 223 Mont. at 23 *(Hunt, J., concurring).*  In *Fuentes, 407 U.S. at* 78,

the Supreme Court implicitly rejected a separate lawsuit as adequate due process in this context: "If the party who loses property through replevin seizure is to get even a post-seizure hearing, he must initiate a lawsuit himself." For these reasons, the Court is not convinced that the right to file a declaratory judgment action is adequate due process in this context. The risk of erroneous permanent deprivation of property is high, and additional safeguards could address this risk.

The Court's conclusion here is not novel. Numerous possessory lien statutes similar to Montana's agisters' lien statute have been deemed inadequate under the Due Process Clause. For example, in *Straley v. Gassaway Motor Company, Inc., supra*, West Virginia's repairman's lien enforcement procedures were declared "unconstitutional and void under the due process provisions of the Fourteenth Amendment[.]" 359 F. Supp. at 906. The statute at issue in *Straley* provided that any "person holding personal property in his possession under a lien may, unless the lien is satisfied by arrangements between the parties, give written notice to the property owner and any other having interests therein that, unless the lien charges are paid, the property will be advertised and sold at public

auction to satisfy the lien." *Id*. at 904-05 (citing W. Va. Code, § 38-11-14).

A similar North Carolina statute was struck down in *Caesar v. Kiser*, 387 F. Supp. 645, 649-50 (M.D.N.C. 1975). In rejecting North Carolina's possessory lien statute, the court stated:

> the owner is subject to permanent deprivation of his property without a hearing prior to the sale of the [property...]. He is, indeed, left in limbo as to whether a hearing will ever occur to establish the validity or invalidity of the underlying debt which supports the lien. Although the owner could certainly institute a civil action under the penalty provisions of [the statute] and an action for damages in the nature of conversion, such action could not reasonably be expected to be concluded within the twenty days provided for notice to be mailed before the sale. As is suggested in *Adams v. Dep[t.] of Motor Vehicles, supra*, only by resort to a temporary restraining order and injunctions could the sale and transfer procedures be halted pending adjudication. These are in the nature of extraordinary remedies and consequently do not provide the assurance that a hearing will be held before the permanent deprivation of the owner's property occurs.
>
> It is, therefore, concluded that the sale provision of N.C.G.S. § 44A-4 permits the sale of [property] by a lienor without affording the owner an opportunity for notice and hearing to judicially determine the validity of the underlying debt and in this respect the statute violates the due process clause of the Fourteenth Amendment.

*Caesar*, 387 F. Supp at 649-50; *see also, e.g., Parks v. Mr. Ford*, 556 F.2d 132 (3rd Cir. 1977); *Stypmann, supra*, 557 F.2d 1338 (9th Cir. 1977);

*Mason, supra*, 360 F. Supp. 420 (N.D. Ga. 1973); Milton C. Toby,

*Agister's Liens in Kentucky: How Much Process is Due?*, 71 Bench & B. 24 (May 2007).

Both the Seventh and the Tenth Circuits have rejected statutes that allowed property to be sold without a prior hearing. In *DiCesare v. Stuart,* 12 F.3d 973 (10th Cir. 1993), *appeal after remand,* 82 F.3d 425 (10th Cir. 1996), *cert. denied,* 519 U.S. 934 (1996), the owner of livestock seized and sold by a county official brought a civil rights action against prosecutors. Reviewing an Oklahoma statute similar to Montana's agisters' lien statute, the court found that the statutory procedure deprived the owner of due process, explaining:

> It is fundamental that "the State may not finally destroy a property interest without first giving the putative owner an opportunity to present his claim of entitlement." *Logan v. Zimmerman Brush Co.,* 455 U.S. 422, 434, 102 S.Ct. 1148, 1157, 71 L.Ed.2d 265 (1982). Further, due process requires that a notice advising an individual that his property right will be terminated must also advise him of the availability of a procedure for protesting the proposed action. *See, e.g., Memphis Light, Gas & Water Div. V. Craft,* 436 U.S. 1, 14-15, 98 S.Ct. 1554, 1563, 56 L.Ed.2d 30 (1978)....
>
> Here, the statutory scheme under which DiCesare's horses were sold makes no provision for a hearing at any time. Compliance with the statute, therefore, did not provide DiCesare with due process .... Further, the notice sent to him merely informed him of the impending sale, without informing him of the availability of an opportunity to present his objections. From the moment these horses were seized, therefore, he has never been

given an opportunity to challenge the seizure, the creation of the lien, or the forfeiture of the horses to satisfy the lien.

*Id.* at 978.

In a similar Seventh Circuit case, an owner of horses seized by a humane society brought a civil rights action for violation of due process in connection with seizure and sale of the horses. Although the challenged Wisconsin statute provided the owner with a five-day redemption period before the sale, the statute was nonetheless found wanting. Applying the *Mathews* test, the Seventh Circuit concluded:

> [T]he risk that an owner will suffer a permanent and wrongful deprivation of his rights under a system that provides only a five-day redemption period is high. Notice and a hearing provide the owner with the opportunity to challenge the legality of the original seizure of his animal, as well as the validity of any costs the state is attempting to assess for the seizure of his animal, as well as the validity of any costs the state is attempting to assess for the seizure and care of the animal. Finally, requiring that the county provide notice and an opportunity for a hearing prior to terminating an owner's interest is not a significant burden.

*Porter v. DiBlasio*, 93 F.3d 301, 307 (7th Cir. 1996). Like this Court, the Seventh Circuit noted that its conclusion "that an opportunity for a hearing is required prior to the permanent deprivation of an owner's property interest ... is not novel." *Porter, supra at* 307 n.7 (citing cases from Alabama, California, Colorado, Pennsylvania, West Virginia, and

Oregon). *See also Smith v. Board of Horse Racing*, 956 P.2d 752, 754 (Mont. 1998).

The Court here reaches no conclusion on the merits of Cox's dispute with Rubios. Cox may not have been successful in preventing the sale had he been given an opportunity to be heard, but that possibility does not doom his claim here. "The right to be heard does not depend upon an advance showing that one will surely prevail at the hearing." *Fuentes, 407 U.S. at 88. See also Good*, 510 U.S. at 62. The Court concludes only that Yellowstone County has not shown that there are no additional or alternative safeguards available to minimize the risk of an erroneous deprivation of property.

### 3. **Lienholder's and Government's Interests**

The third and final factor to consider is the interest of the party seeking the remedy, combined with due regard for any ancillary interest the government may have in providing the procedure or forgoing the added burden of providing greater protections. Yellowstone County has not argued that providing some additional process would result in unreasonable delays or burdens that would prejudice either the lienholder or the government.

Greater protections need not necessarily include a trial, or the right to bring witnesses and present evidence, as Cox requests in his Complaint. *Court Doc. 1 at 6.* Even in circumstances in which a pre-deprivation hearing is required by due process, the hearing "need not be elaborate." *Cleveland Board of Education v. Loudermill*, 470 U.S. 532, 545 (1985). A hearing need not approximate a trial-like proceeding; in fact, it may be 'very limited' and still pass constitutional muster." *Brewster, supra,* 149 F.3d at 985 (*citing Gilbert v. Homar,* 520 U.S. 924 (1997) (holding that pre-termination process need only include oral or written notice of charges, explanation of the evidence, and an opportunity for the plaintiff to tell his or her side of the story)). The nature and form of such prior hearings is "legitimately open to many potential variations...." *Fuentes,* 407 U.S. at 96. Other states have addressed due process concerns in the context of possessory lien foreclosures. *See, e.g.,* § 38-20-205, C.R.S. (Colorado's Agistor's Lien Act Foreclosure Provisions); Cal.Civ.Code § 3068.1 *et seq.*

Accordingly, the Court finds that Yellowstone County has not shown that the lienholders' or the governments' interests would be adversely affected if a property owner such as Cox was allowed to be

heard prior to the deprivation of property, or that it would be burdened by providing greater protections. *See Zinermon v. Burch*, 494 U.S. 113, 132 (1990) ("In situations where the State feasibly can provide a predeprivation hearing before taking property, it generally must do so regardless of the adequacy of a postdeprivation tort remedy to compensate for the taking").

## V.  <u>CONCLUSION</u>

Based on the foregoing, **IT IS RECOMMENDED** that Yellowstone County's Motion for Summary Judgment (Court Doc. 30) be DENIED.[4]

**NOW, THEREFORE, IT IS ORDERED** that the Clerk shall serve a copy of the Findings and Recommendation of United States Magistrate Judge upon the parties. The parties are advised that pursuant to 28 U.S.C. § 636, any objections to the findings and recommendation must be filed with the Clerk of Court and copies served on opposing counsel on or before May 11, 2011, or objection is waived.

---

[4]Yellowstone County also moves for summary judgment on Cox's claim regarding the confusion over the location of the sale. Given Cox's settlement of any further damage claims, and the Court's findings on the constitutionality of the agisters' lien statute, the Court does not reach this issue.

**IT IS FURTHER ORDERED THAT**, on or before May 11, 2011,

Yellowstone County must file its objections, if any, to entry of summary

judgment in favor of Cox, pursuant to Fed.R.Civ.P. 56(f)(1).

DATED this 26th day of April, 2011.

/s/ Carolyn S. Ostby
United States Magistrate Judge